STATE v. ARNOLD STOFFEL

(No. 6901)

Submitted January 27, 1931.     Decided February 3, 1931.

*D. L. Salisbury* and *S. D. Lopinsky*, for plaintiff in error.

*Howard B. Lee*, Attorney General, and *W. Elliott Nefflen*, Assistant Attorney General, for the State.

LIVELY, JUDGE:

Upon an indictment in the intermediate court for Kanawha County for the forgery and uttering of a check purporting to have been signed by Mrs. Charles Harrington for the payment of $18.22 on the Charleston Trust Company, defendant was, by a jury, found guilty as charged, and sentenced to confinement in the industrial school for boys, by order entered July 15, 1930.

He prosecutes error to this court on the ground that the state's evidence was insufficient to convict, and therefore the trial judge erred in refusing to give his proffered instruction to acquit.

According to the evidence of Howard Mills he was requested by defendant in November, 1929, to accompany him in his Ford car to Hubbard Grocery Company for the purpose of getting some groceries, the order for which had been phoned to the company. He accompanied defendant and was given a check to pay for the groceries, and sent into the grocery establishment to get the groceries, while defendant turned his car and waited. He did so, delivered the check, obtained the groceries and a balance in cash, the check being greater than the amount of the groceries, and delivered them and the cash to defendant in his car. He was then driven home. A short time later, he again, upon request of defendant, made a like trip to the grocery and was sent in to get them, having been delivered a check to pay for them. Upon delivery of the check to an employee, he was told that the other check he had brought in on the former occasion was a forgery, and replied that he knew nothing about it, that he was acting for defendant. Thereupon he was directed to go out and bring defendant in. He went out and defendant told him it was a crooked check and to get in the car. He did so and was again driven home. The last check was also left in the hands of the employee. The first check was purported to have been signed by Mrs. Charles H. Harrington, dated

November 27, 1929, payable to the order of J. C. Jordan and drawn on the Charleston Trust Company for $18.22, with a notation on it, "For groceries." Mrs. Harrington said she had not signed that check and had not authorized anyone to sign it for her. The endorsement of J. C. Jordan (the payee) on the back was shown not to be his signature. Lawrence, an employee of the grocery company, said that some one had phoned to the company saying he was acting for J. C. Jordan and placed an order for goods informing them that he would send over a check and pay for the goods. A short time thereafter, Mills came in, got the goods, delivered the check, receiving a cash difference between the amount of the goods and the check. The check came back unpaid by the bank as spurious, and in about three days thereafter, Mills came back and said he wanted to get some goods phoned in for by J. C. Jordan, and offered a check drawn by one Shaffer for $14.00. These goods were not delivered, and the indictment followed. Defendant said he had never been up at the Hubbard Grocery Company; that he knew nothing of the checks, and that he had never delivered a check to Mills to carry into the grocery. In short, he made a flat contradiction of the evidence of Mills, and sought to fix the crime, if any had been committed, upon Mills. The jury gave credence to Mills.

The argument for reversal is that the state did not make out a case of forgery or uttering a forged instrument by defendant. It is said that Mills did not identify the check for $18.22 as the check which defendant delivered to him. Mills said he did not look at the check which defendant gave him, but delivered it to Lawrence when he received the first order of groceries and received from the latter the cash balance thereon. Lawrence corroborates Mills as to the delivery of the first check and the cash balance paid the latter. There were only two checks, and it is quite clear that the check in evidence which was clearly proved to be a forgery was the one which Mills says was delivered to him by defendant with instructions to pay for the groceries. There was ample evidence to sustain the second count in the indictment charging defendant with feloniously uttering and attempting to employ as true the forged check which is set out therein, *in haec verba,*

with intent to defraud, knowing that the check was a forgery.

It is well settled that a verdict will be set aside and a new trial awarded when the verdict is against the law or contrary to the evidence, or where the verdict is without evidence. But that is not the instant case. On the other hand, it is as well settled that if a new trial depends upon the weight of testimony, or reasonable inference to be drawn from it, the verdict of a jury will be rarely disturbed. The jury had the right to reject defendant's testimony that he had no connection whatever with the forgery or uttering of the forged check, and, on the contrary, believe that he delivered the forged paper to Mills for the purpose of getting groceries and money, knowing it to be a forgery and with intent to defraud. Citations of authority for these well settled principles of law would be superfluous.

*Affirmed.*